BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE PRISON INDUSTRY BOARD has requested an opinion on the following question:
May the Prison Industry Board create a position exempt from the civil service system for an executive officer of the board?
 CONCLUSION
The Prison Industry Board may not create a position exempt from the civil service system for an executive officer of the board.
 ANALYSIS
The Prison Industry Authority ("Authority") is charged with developing and operating a variety of self-sufficient manufacturing, agricultural, and service industries employing state prisoners. Penal Code section 2801[1] provides:
"The purposes of the authority are:
 "(a) To develop and operate industrial, agricultural, and service enterprises employing prisoners in institutions under the jurisdiction of the Department of Corrections, which enterprises may be located either within those institutions or elsewhere, all as may be determined by the authority.
 "(b) To create and maintain working conditions within the enterprises as much like those which prevail in private industry as possible, to assure prisoners employed therein the opportunity to work productively, to earn funds, and to acquire or improve effective work habits and occupational skills.
 "(c) To operate a work program for prisoners which will ultimately be self-supporting by generating sufficient funds from the sale of products and services to pay all the expenses of the program, and one which will provide goods and services which are or will be used by the Department of Corrections, thereby reducing the cost of its operation."
The Authority is administered by an 11-member Prison Industry Board ("Board"). (§ 2802.) Section 2808 states the general duties of the Board:
 "The board, in the exercise of its duties, shall have all of the powers and do all of the things that the board of directors of a private corporation would do, except as specifically limited in this article, including, but not limited to, all of the following:
 "(a) To enter into contracts and leases, execute leases, pledge the equipment, inventory and supplies under the control of the authority and the anticipated future receipts of any enterprise under the jurisdiction of the authority as collateral for loans, and execute other necessary instruments and documents.
 "(b) To assure that all funds received by the authority are kept in commercial accounts according to standard accounting practices.
"(c) To arrange for an independent annual audit.
 "(d) To review and approve the annual budget for the authority, in order to assure that the solvency of the Prison Industries Revolving Fund is maintained.
 "(e) To contract to employ a general manager to serve as the chief administrative officer of the authority. The general manager shall serve at the pleasure of the chairperson. The general manager shall have wide and successful experience with a productive enterprise, and have a demonstrated appreciation of the problems associated with prison management.
 "(f) To apply for and administer grants and contracts of all kinds.
 "(g) To establish, notwithstanding any other provision of law, procedures governing the purchase of raw materials, component parts, and any other goods and services which may be needed by the authority or in the operation of any enterprise under its jurisdiction. Those procedures shall contain provisions for appeal to the board from any action taken in connection with them.
 "(h) To establish, expand, diminish, or discontinue industrial, agricultural and service enterprises under the authority's jurisdiction to enable it to operate as a self-supporting enterprise, to provide as much employment for inmates as is feasible, and to provide diversified work activities to minimize the impact on existing private industry in the state.
 "(i) To hold public hearings pursuant to subdivision (h) to provide an opportunity for persons or organizations who may be affected to appear and present testimony concerning the plans and activities of the authority. The authority shall assure adequate public notice of those hearings. No new industrial, agricultural, or service enterprise which involves a gross annual production of more than fifty thousand dollars ($50, 000) shall be established unless and until a hearing concerning the enterprise has been held by a committee of persons designated by the board including at least two board members. The board shall take into consideration the effect of a proposed enterprise on California industry and shall not approve the establishment of the enterprise if the board determines it would have a comprehensive and substantial adverse impact on California industry which cannot be mitigated.
 "(j) To periodically determine the prices at which activities, supplies, and services shall be sold.
 "(k) To report to the Legislature in writing, on or before February 1 of each year, regarding:
 "(1) The financial activity and condition of each enterprise under its jurisdiction.
 "(2) The plans of the board regarding any significant changes in existing operations.
 "(3) The plans of the board regarding the development of new enterprises.
 "(4) A breakdown, by institution, of the number of prisoners at each institution, working in enterprises under the jurisdiction of the authority, said number to indicate the number of prisoners which are not working full time."
The question presented for resolution is whether the Board, in performing its duties, has the authority to create a position exempt from the civil service system for an executive officer of the Board. We conclude that it does not have such authority.
We are informed that the proposed functions of an executive officer of the Board would be as follows: provide administrative support and assistance to the Board; consult with Board members and coordinate Board activities in accordance with state laws, rules, and regulations; develop issues and set agenda items for meetings, public hearings, and other special meetings; provide analysis, consultation, and recommendations to the Board regarding policy decisions and actions; orient new Board members relative to the responsibilities, goals, and policies of the Board and the Authority; prepare correspondence and reports as necessary; serve as a representative of the Board in meetings with the Authority and the Department of Corrections; maintain working relationships with various boards, commissions, departments, agencies, and other public and private organizations necessary to further the goals of the Board; review and analyze legislative bills and amendments to determine their potential impact on the Authority and the Board; assign legislative bill analyses to appropriate staff members for analysis; research and rewrite analyses as necessary, and approve final bill analyses for submittal; prepare legislative reports; advise the general manager and the Board on legislative matters impacting the Authority and the Board; serve as the primary legislative liaison for the Authority and the Board with the Department of Corrections, the Youth and Adult Correctional Agency, the Governor's Office, the Legislative Analyst's Office, the Department of Finance, and other appropriate state and local agencies and constituent groups; coordinate with the Department of Corrections' legislative staff to secure authors for legislation affecting the Authority and the Board; serve as the Authority's principal legislative representative and provide testimony before legislative committees; plan and coordinate activities to ensure a cohesive working relationship between the Board and the Authority; link Board members with appropriate Authority staff members; coordinate tours for visitors to the Authority; coordinate the development and updating of the strategic plan and mission statement for the Authority to ensure that the documents continually reflect the direction of the Authority and the Board; perform special projects for the general manager as needed; keep the general manager advised of warden confirmations and other matters resulting from the legislative process; keep apprised of new laws, regulations, and procedures by attending seminars, training, and meetings; and assist Authority staff members in other tasks or projects as necessary.
It is readily apparent that the performance of these proposed duties by an executive officer of the Board would benefit the successful operations of the Authority. The legal issue to be addressed is whether the person appointed to perform these duties may serve in a position that is exempt from the civil service system. The answer to that question is found in the California Constitution.
California's civil service encompasses every state employee and officer except those who are the subject of an exemption specified in the Constitution. (Professional Engineers v.Department of Transportation (1997) 15 Cal.4th 543, 548;California State Employees' Assn. v. Williams (1970)7 Cal.3d 390, 395; 67 Ops.Cal.Atty.Gen. 27, 28 (1984); 65 Ops.Cal.Atty.Gen. 475, 479-480 (1982).) Exemptions are contained in article VII, section 4, of the Constitution:
"The following are exempt from civil service:
 "(a) Officers and employees appointed or employed by the Legislature, either house, or legislative committees.
 "(b) Officers and employees appointed or employed by councils, commissions or public corporations in the judicial branch or by a court of record or officer thereof.
 "(c) Officers elected by the people and a deputy and an employee selected by each elected officer.
"(d) Members of boards and commissions.
 "(e) A deputy or employee selected by each board or commission either appointed by the Governor or authorized by statute.
". . . . . . . . . . . . . . . . . . . . . . . . . ."
The Board is a "board . . . authorized by statute" (Cal. Const., art. VII, § 4, subd. (e)) and is therefore entitled to have one "deputy or employee" exempt from the civil service system. (See 67 Ops.Cal.Atty.Gen., supra, at pp. 29, 31; 56 Ops.Cal.Atty.Gen. 353, 356 (1973).) This right to have an exempt deputy or employee does not apply to each board member individually, but rather to each board or commission as awhole. (67 Ops.Cal.Atty.Gen., supra, at p. 31; 63 Ops.Cal.Atty.Gen. 858, 859-860 (1980)).
Here, the Board may not create an executive officer position that is exempt from civil service because it already has another "deputy or employee," the Authority's general manager, who is civil service exempt. As described in subdivision (e) of section 2808, the general manager serves "as the chief administrative officer of the authority." He or she "shall be the appointing authority for all personnel of the authority other than the general manager." (§ 2809.) Among the specific duties of the general manager are the borrowing of money (§ 2810), the setting of a compensation schedule for inmate employees (§ 2811), and the ordering of public works projects involving the construction, renovation, or repair of prison facilities to be performed by inmate labor (§ 2816). Most importantly, the general manager is employed by the Board and "shall serve at the pleasure of the chairperson." (§ 2808, subd. (e).) The general manager is not part of civil service and does not have civil service eligibility upon termination of his or her appointment as the Authority's general manager. The Board acknowledges that the general manager is not subject to the requirements or protections of California's civil service system.
Since the Constitution allows the Board to have only one "deputy or employee" who is exempt from the state's civil service (Cal. Const., art. VII, § 4, subd. (e)), and the general manager holds a position that is exempt from civil service, it follows that the Board has no authority to create a second exempt position for an executive officer. (See 67 Ops.Cal.Atty.Gen.,supra, at pp. 28-31.)
We conclude that the Board may not create a position exempt from the civil service system for an executive officer of the Board.
[1] All references hereafter to the Penal Code are by section number only.